CHARLES HARBOUGH LUMBER COMPANY, INC.

*v.*

STATE OF ILLINOIS.

*Opinion filed November 26, 1918.*

CONTRACT—*material man must follow provisions of statute.* Where material is furnished to contractor to complete work for the State, the person furnishing such material must follow the provisions of Section 23, of Chapter 82, Hurd's Revised Statutes, to be protected, or to recover the purchase price of the material furnished.

PRESUMPTION—*not indulged against the State.* No presumptions are indulged aganst the State to aid a claimant in his demand.

IGNORANCE OF LAW—not ground for recovery. That the claimant is ignorant of the law or is guilty of *laches* is not ground for allowance of his claim.

Edward J. Brundage, Attorney General, for State.

This is a claim filed to recover for the value of building material alleged to have been furnished by claimant to Wm. M. Deffenbaugh, and Son, who contracted with the State of Illinos to erect a State building, to-wit: The St. Charles School for Boys building, in which building said material was by the said contractors used, amounting to a balance of eight hundred twenty-four dollars, eighty-eight cents ($824.88).

The evidence shows that on the first day of August, 1916, bids were received by the Board of Administration of Illinois, for the erection of buildings for the accommodation of said School for Boys, and that the contract was awarded to said Wm. M. Deffenbaugh, of Springfield, Illinois, for the sum of nineteen thousand, one hundred eighty-nine dollars ($19,189.00). Thereafter, said Board entered into a contract with Wm. M. Deffenbaugh and Son, co-partners, for the erection of said building for said sum, wherein and whereby the said contractors were to furnish all material, labor, tools, and equipments necessary to the completion of said building according to contract.

The said Wm. M. Deffenbaugh and Son, contractors, entered into a bond to the State Board of Administration for the faithful performance of said contract in the sum of nineteen thousand one hundred eighty-nine dollars ($19,189.00), with the American Surety Company, of New York, as surety thereon.

Wm. M. Deffenbaugh and Son, hereinafter called the contractors, from time to time, verbally ordered and procured of claimant a bill of building material to be used in said building, amounting to two thousand two hundred seventy-five dollars and sixty-five cents ($2,275.65). Such orders covered a period of time from September 7, 1916, to March 28, 1917, both dates inclusive. By payments and return of material,

the total sum last mentioned was reduced to eight hundred twenty-four dollars and eighty-eight cents ($824.88), for which he files claim. A bill of particulars is attached, and amply supported by evidence, and to which there is no controversy.

It is claimed that "under a mistake of fact, the material, labor, etc., were figured on too low a basis, and that the State, if it should pay claimant his demand, would still be obtaining the work and material, etc., at a less figure than the fair market value thereof, and less than the other fair and reasonable bids made thereon by responsible contractors."

This argument does not appeal to the Court as having much force or legal logic, especially when it is shown by the evidence that this contract was made before war was declared, and that subsequently thereto, material and labor advanced very rapidly. There is no evidence showing or tending to show, that the contract was awarded at an unreasonably low price.

Claimant and the Board of Administration had some correspondence in the spring and summer of 1917, relative to the failure of the contractors to pay the claimant the balance he now claims, and if any further payments were made by the State to the contractor after that it is not disclosed by the evidence.

It is shown, however, that in April, 1917, the contractor abandoned, and refused to complete his contract for the erection of said buildings. Thereupon, the Board of Administration employed another firm, Lehman & Jenson Construction Company, to complete the building on same plans and specifications contained in the Deffenbaugh & Son contract, for which, said Lehman and Janson Construction Company was paid the sum of nine thousand seven hundred fifty-four dollars ($9,754.00). It appears, the State Treasurer had paid Mr. Deffenbaugh on the job, the sum of eleven thousand five hundred dollars ($11,500.00), which was eighty-five (85%) per cent of the amount of labor, material, furnished, as shown by statement of the architect.

It is claimed by claimant that fifteen (15%) per cent of the value of work and material furnished by Deffenbaugh and Son, was forfeited to the State, and that the State should pay the amount to claimant. The contract between the Board of Administration and Deffenbaugh & Son, provided that the building should be constructed for nineteen thousand one hundred eighty-nine dollars ($19,180.00), as stated, and that in the event the contractors should fail, or refuse to complete said buildings according to the terms of the contract, the Board of Administration should have the work completed and charge the expense thereof to said Deffenbaugh & Son. This, the Board of Administration seemed to have done. The record of evidence fails to disclose just how much, and just when was paid by the State Treasurer to the original contractors, Deffenbaugh & Son. It is not shown, as a whole, that the State of Illinois came out ahead in any sum by reason of any forfeiture in the two contracts. The evidence falls short in this and several other particulars, and we cannot aid the claimant in any presumption against the State in order to make out his claim.

But in the event the State had been properly notified with a "Stop Order" as alleged; or that the State had profited by a forfeiture under the first contract, it could not avail the claimant in this case anything.

Where a remedy and procedure is provided by the plain provision of the statute, it must be followed. Chapter 82 of the Revised Statute of Illinois, entitled "Liens" furnishes full, complete and ample protection for all mechanics material men, labors, sub-contractors, etc.

Section 23 of Chapter 82, above referred to, provides as follows: "Any person who shall furnish material, apparatus, fixtures, machinery, or labor to any contractor for a public improvement in this State, shall have a lien on the money, bonds or warrants, due or to become due, such contractor for such improvement: *Provided,* such person shall, before such payment, or delivery thereof, is made to such contractor, notify the officials of the State, County, City or municipality whose duty it is to pay such contractor, of his claim by a written notice. It shall be the duty of such official so notified to withhold a sufficient amount to pay such claim until it is admitted, or by law established, and thereupon, to pay the amount thereof, to such person, and such payment shall be a credit on the contract price to be paid such contractor. Any officer violating the duty hereby imposed upon him, shall be liable on his official bond to the person serving such notice for the damages resulting from such violation, which may be recovered in an action at law in any Court of competent jurisdiction. There shall be no preference between the persons serving such notice, but all shall be paid pro rata in proportion to the amount due under their respective contracts."

This statute was in force, July 1, 1903, the date of its enactment, till July 1, 1917. The Legislature in 1917, passed another Lien Law; but Section 23 was not materially changed from that of 1903. Hurd's Revised Statute of 1917, Chapter 82, Section 37. From the plain provision of the foregoing law, it shows that claimant had a clear, positive and expeditious remedy under the statute to protect himself and enforce his claim as a materialman, by giving proper notice to the State official, whose duty it was to pay. He furnished a larger part of the material in fall of 1916, and might, at any time, thereafter, have given notice as above provided. Upon giving such notice the officer was legally required to stop further payment to contractors until a proper settlement could be had with him, as provided in foregoing provision of law.

A failure of the officer so served to pay claimant as provided, makes him liable on his official bond. But it seems that from the evidence on page 22 of claimant's evidence, by the manager of the claimant, that no notice was served, or given to any one of a lien claimed. But whether notice was, or was not served by claimant, it is immaterial in passing upon his right to a claim against the State. He evidently was guilty of laches, and in ignorance of his statutory rights, for which the defendant cannot be held accountable. Had he followed the plain provisions of the statute in this case cited, he undoubtedly could have en-

forced payment of his claim. Proper notice in due time on the State official liable to pay, would have held the money under the State's control till claim was properly adjusted and paid. A failure by such officer to so hold funds after notice due to contractor, would make him liable on his official bond by suit in any court having jurisdiction of same.

The claimant surely has no right of action in this Court for the enforcement of his claim, either in law, or equity. This claim is accordingly rejected.